IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AEVOE CORPORATION, | |
| Plaintiff, | No. C 11-03215 JSW |
| v. | |
| STANLEY PACE, | **ORDER GRANTING MOTION FOR STAY** |
| Defendant. | |

Now before the Court is the motion of Defendant Stanley Pace ("Pace") to stay this action. The Court finds this matter is appropriate for disposition without oral argument. Accordingly, the hearing set for August 10, 2012 is VACATED. Having carefully reviewed the parties' papers and considered their arguments and the relevant legal authority, and good cause appearing, the Court hereby GRANTS Pace's motion.

**BACKGROUND**

Plaintiff Aevoe Corporation ("Aevoe") is a company based in Sunnyvale, California that provides accessories for consumer electronic products and computers under the MOSHI brand. Aevoe has continuously used the federally registered trademark MOSHI, Federal Registration No. 3,786,992, in commerce since 2005. Defendant Pace owns the domain name "moshi.com." The following allegations are in dispute. Aevoe alleges that Pace maintains a website at "moshi.com" that provided links to other websites offering free internet games. Aevoe further alleges that the website at "moshi.com" also offers to sell the "moshi.com" domain name. Pace allegedly made an offer to sell the "moshi.com" domain name to Aevoe. Aevoe allegedly

1  refused, and instead requested that Pace transfer the domain name to it. Pace allegedly refused
2  and repeated its offer to sell. Aevoe then sent a letter demanding that Pace immediately cease
3  and desist from use of the MOSHI mark.
4      On June 28, 2011, Aevoe sued Pace for: (1) false designation of origin, (2) trademark
5  infringement, (3) trademark dilution, (4) California unfair competition, (5) California dilution
6  and common law trademark infringement, (6) unfair competition, and (7) violation of the
7  Anticybersquatting Consumer Protection Act. Aevoe contends that Pace's use of the
8  "moshi.com" domain name harms both the company and the public by causing consumers to
9  "become ... confused as to the source, origin or sponsorship of [Pace's] website and the
10 information contained therein[,] ... become ... confused as to the affiliation, connection or
11 associations of [Pace] and [Pace's] website with [Aevoe's business] Moshi[,] ... and [interferes]
12 with Moshi's goodwill, reputation and customer relationships[.]" (Complaint ("Compl.") ¶ 35.)
13 Aevoe further alleges that Pace created the website at "moshi.com" "with previous knowledge
14 of [Aevoe's] prior use and superior rights in the mark, and with previous knowledge of the
15 reputation of the mark in interstate commerce" for the "purpose of trading upon [Aevoe's]
16 goodwill[.]" (*Id.* ¶ 33.) Aevoe thus alleges that Pace wilfully and deliberately infringed on and
17 diluted Aevoe's MOSHI mark. Aevoe also alleges that Pace registered and used "a domain
18 name that is identical or confusingly similar to the MOSHI mark" with a bad faith intent to
19 profit from that mark. (*Id.* ¶ 58.) Aevoe seeks to enjoin Pace's alleged cybersquatting.
20     On November 7, 2011, Pace filed an answer and filed counterclaims. Following a
21 motion to dismiss the counterclaims, Pace filed an answer and amended counterclaims. Pace's
22 amended counterclaims consist of claims for: (1) cancellation of trademark registration, (2) wire
23 fraud, (3) fraud and deceit, (4) reverse domain name hijacking, (5) abuse and assault, and (6)
24 unfair competition. Pace alleges that Aevoe made misrepresentations to the U.S. Patent and
25 Trademark Office during the application process for the mark MOSHI. Therefore, Pace alleges,
26 the mark was fraudulently obtained and must be cancelled. Pace further alleges that Aevoe
27 attempted to purchase the domain name "moshi.com" from him through a series of emails in
28 which Aevoe's agent misrepresented Aevoe's structure, affiliation and intentions, and failed to

1   indicate that Aevoe claims legal entitlement to the domain name. Pace also alleges that the
2   domain name "moshi.com" was "improperly disabled ... by virtue of [Aevoe] having initiated
3   this action in bad faith in an attempt to improperly deprive [Pace] of its domain name."
4   (Answer ("Ans.") ¶ 70.) Finally, Pace alleges that Aevoe's Complaint "constitutes abuse and
5   assault pursuant to state law, because the Complaint was filed for the unauthorized purpose of
6   seeking to acquire a domain name that [Aevoe] knew it had, and continues to have, no
7   legitimate rights to procure through the legal process." (*Id.* ¶ 76.)

8   On April 6, 2012, this Court granted Aevoe's motion to dismiss all six amended
9   counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") and
10  granted Aevoe's special motion to strike counterclaims five and six pursuant to California's
11  anti-SLAPP ("Strategic Lawsuit Against Public Participation") statute. *See* Cal. Code Civ.
12  Proc. § 425.16. On April 27, 2012, Pace appealed the order granting the dismissal and the
13  strike to the Court of Appeals for the Ninth Circuit ("Ninth Circuit"). On June 1, 2012, Pace
14  filed a motion to stay proceedings in this Court.

**ANALYSIS**

**A.     Pace's Notice of Appeal Effectively Stays These Proceedings.**

17  Pace argues that his notice of appeal amounts to a *de facto* stay of proceedings, as the
18  issues on appeal overlap substantially with those to be adjudicated in Aevoe's claims. (Motion
19  ("Mot.") at 9-10.) "The filing of a notice of appeal is an event of jurisdictional significance - it
20  confers jurisdiction on the court of appeals and divests the district court of its control over those
21  aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S.
22  56, 58 (1982). "This rule is judge-made; its purpose is to promote judicial economy and avoid
23  the confusion that would ensue from having the same issues before two courts simultaneously."
24  *Natural Resources Defense Council, Inc. v. Southwest Marine Inc.*, 242 F.3d 1163, 1166 (9th
25  Cir. 2001) (citing *Masalosalo v. Stonewall Insurance Co.*, 718 F.2d 955, 956 (9th Cir. 1983)).

26  Pace's counterclaims involve the alleged "deceptive and frivolous nature of Aevoe's
27  main claims." (Mot. at 10.) Thus, any evaluation of the counterclaims will necessarily include
28  a consideration of the merits of Aevoe's claims. For this reason, evaluation of Pace's

3

**United States District Court**
For the Northern District of California

1 counterclaims will involve many of the same facts, evidence, and witnesses relevant to Aevoe's
2 claims. Therefore, to allow the matter to proceed in this Court before the appeal is disposed of
3 would risk duplicative litigation. *See Colorado River Water Conservation Dist. v. United*
4 *States*, 424 U.S. 800, 817 (1976) (noting that duplicative litigation in federal courts is
5 disfavored). In the interest of judicial economy, the Court is divested of jurisdiction over these
6 issues. Accordingly, the Court STAYS proceedings in this matter until the appeal is concluded.

      **1.    A Stay Is Appropriate Even if Pace Appeals Under the Collateral Order Doctrine**.

9     Pace seeks review of this Court's order dismissing his counterclaims under the theory
10 that it is an immediately appealable collateral order, pursuant to California's Anti-SLAPP
11 statute. (Mot. at 15.) Aevoe argues that a stay is inappropriate because "an appeal from a
12 collateral order does not stay proceedings." (*See* Opp. Br. at 4 (citing *Britton v. Co-op Banking*
13 *Group*, 916 F.2d 1405, 1412 (9th Cir. 1990)).) However,"[a]bsent a stay, an appeal seeking
14 review of collateral orders does not deprive the trial court of jurisdiction over *other* proceedings
15 in the case, and an appeal of an interlocutory order does not ordinarily deprive the district court
16 of jurisdiction *except with regard to the matters that are the subject of the appeal*." *Britton*,
17 916 F.2d at 1412 (emphasis added).

18     The issue in Pace's counterclaim for cancellation of trademark registration is whether
19 Aevoe made misrepresentations during the trademark application process and therefore should
20 not have been awarded the MOSHI mark. Pace's reverse domain name hijacking, wire fraud,
21 fraud and deceit, and abuse and assault counterclaims focus on the issue of whether or not
22 Aevoe knew it had "no legitimate rights to procure" the "moshi.com" domain name through the
23 legal process. (*See* Ans. ¶ 76.) Aevoe's infringement, dilution, cybersquatting, and other
24 claims also depend upon Aeveo's ownership of a valid trademark. Thus, the issue of whether
25 the MOSHI mark was properly registered is central to Aevoe's claims as well. Because the
26 issues involved in Pace's counterclaims are substantially intertwined with those involved in
27 Aevoe's main claims, the main claims consist to some extent of matters that are the subject of
28

4

the appeal, and are not distinctly "other" proceedings. Thus, a stay pending appeal is appropriate.

### 2. A Stay Is Appropriate Even if the Ninth Circuit Ultimately Determines that it Lacks Jurisdiction.

Aevoe further contends that the Court's dismissal of Pace's counterclaims and grant of its special motion to strike are not a final judgment and therefore jurisdiction in the Ninth Circuit is improper. (Opp. at 4-5.) However, it is Pace's notice of appeal that has jurisdictional significance, divesting the Court of the matters that are the subject of the appeal. *See Griggs*, 459 U.S. at 58. The Ninth Circuit will determine whether it has jurisdiction to hear Pace's appeal. Until then, proceedings in this Court are subject to a stay.

## B. A *Landis* Stay Is Also Appropriate.

Even if Pace's notice of appeal did not effectively stay proceedings in this Court, it would still be appropriate and within the Court's discretion to grant Pace's motion to stay.

### 1. Legal Standard on a Motion for a Stay of Proceedings.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control disposition of the causes on its docket with economy of time and effort for itself, counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "The exertion of this power calls for the exercise of a sound discretion." *CMAX, Inc. v. Hall*, 200 F.2d 265, 268 (9th Cir. 1962). Accordingly, it is within the Court's discretion to determine whether a stay is warranted.

A district court must balance competing interests when deciding whether to grant a stay. This Court must examine: (1) "possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Id*. (citing *Landis*, 299 U.S. at 254-55). A stay may be the most efficient and fairest course when there are "independent proceedings which bear upon the case." *Leyva v. Certified Grocers of Cal., Ltd.*,

593 F.2d 857, 863 (9th Cir. 1979). Pace bears the burden of proving that he will suffer hardship or inequity if forced to proceed in this action. *See Landis*, 299 U.S. at 255.

### 2. There Is a Fair Possibility that a Stay Will Harm Aevoe or the Public.

The first *Landis* factor requires that the Court weigh the possible damage to Aevoe if a stay is granted. This factor weighs against a stay if delaying the action could harm Aevoe. *See id.* "[I]f there is even a fair possibility that the stay ... will work damage to some one else," the party seeking the stay "must make out a clear case of hardship or inequity." *Id.*

Aevoe contends that Pace's alleged infringement is a "continuous and ongoing harm to Aevoe's business" and that because "a stay would delay Aevoe from obtaining permanent injunctive relief, a stay would magnify risk of injury to Aevoe" and the public. (*See* Opp. Br. at 6 (citing *Lockyer v. Mirant Corp.,* 398 F.3d 1098, 1112 (9th Cir. 2005).) In *Lockyer*, the Ninth Circuit held that there was more than a "fair possibility" of harm to the plaintiff and to the public where the plaintiff sought injunctive relief against a monopoly that was causing ongoing harm to the public, and thus a stay in proceedings would perpetuate such harm. 398 F.3d at 1112. Similarly here, Aevoe seeks to enjoin the alleged cybersquatting that Aevoe contends harms both the company and the public by causing consumers to become further confused as to the source of Pace's website with Aevoe, and thereby interferes with Aevoe's "goodwill, reputation and customer relationships[.]" (*See* Compl. ¶ 35.) If Aevoe's claims have merit, then there is a "fair possibility" that harm to Aevoe and consumers would result from delaying injunctive relief and thus allowing these activities to continue. Therefore, the first *Landis* factor weighs against staying this action.

### 3. Pace Has Made a Clear Case That It Will Suffer Hardship or Inequity If Forced to Proceed.

The second *Landis* factor weighs in favor of granting a stay if the moving party will endure hardship or inequity if the action is not delayed. *See Landis*, 299 U.S. at 255. Pace contends that because "some issues in the complaint and the counterclaims are inextricably interwoven, Pace will suffer significant hardship if the case is not stayed." (Mot. at 14.) In particular, Pace alleges that if the case moves forward it "would lose the right to defend itself

6

1 against the Plaintiff's case by demonstrating that the trademark registration was fraudulently
2 granted." (*Id.*) Furthermore, Pace contends that the dismissed counterclaims arise from "the
3 same facts, evidence and witnesses central to Plaintiff's claims" so to move forward in this
4 Court would risk duplicative discovery, depositions, and testimony, as well as the possibility of
5 having two trials on the same material facts. (*Id.* at 12, 14-15.) This concern is well-founded.
6 For example, if dismissal of Pace's cancellation of trademark registration counterclaim is
7 vacated, litigation of this claim could overlap with and potentially dispose of Aevoe's
8 trademark infringement claim. Likewise, if dismissal of Pace's claim that Aevoe engaged in
9 abuse of process is vacated, Pace would have a potential defense to all of Aevoe's claims.
10 Absent a stay, a successful appeal could thus result in significant, duplicative litigation
11 expenses. Aevoe argues that such expenses should not constitute hardship to Pace because
12 these arguments failed under Rule 12(b)(6) and thus Pace cannot pursue them in this Court.
13 However, an appeal is pending on whether such dismissal was proper.

14 Aevoe further contends that any potential increased costs of litigation to Pace are simply
15 "ordinary costs of litigation" and thus do not constitute hardship. (*Id.* at 8 (citing *Lockyer*, 398
16 F.3d at 1112 (noting that "being required to defend a suit, without more, does not constitute a
17 'clear case of hardship or inequity.'")).) In *Beijing Tong Ren Tang (USA), Corp. v. TRT USA*
18 *Corp.*, 2009 WL 5108578, at *2 (N.D. Cal. Dec. 18, 2009), the court declined to stay federal
19 proceedings pending a state court action on the same issues with the same parties because the
20 financial burden of litigating the case did not, by itself, rise to the level of hardship or inequity.
21 Here, however, Pace faces greater hardship in the form of his lost potential defenses involving
22 his trademark cancellation and abuse of process claims, and the fact that denial of a stay has the
23 potential to result not simply in the financial burden of litigating the case, but a significantly
24 increased financial burden in potentially duplicative litigation. Thus, Pace has made a clear
25 case that he would suffer hardship or inequity if a stay is not granted. *See Negotiated Data*
26 *Solutions, LLC v. Dell Inc.*, 2008 WL 4279556, *2 (N.D. Cal. Sept. 16, 2008) (finding "that
27 duplicative litigation costs and the pursuit of broad discovery when a far narrower scope of
28 discovery would be required, are sufficient to make a showing of hardship justifying a stay");

7

*see also Gong-Chun v. AETNA, Inc.*, 2010 WL 1980175, at *3-4 (E.D. Cal. May 17, 2010) (finding that potential increase in cost of litigation if stay is not granted constitutes hardship to defendant). The second *Landis* factor weighs in favor of a stay.

### 3. Pace Has Shown a Stay Furthers the Orderly Course of Justice.

The third *Landis* factor weighs in favor of granting a stay when the orderly course of justice will be advanced through the simplifying of issues, proof, and questions of law. Pace argues that his counterclaims involve many of the same issues as Aevoe's claims, and thus are based on many of the same facts, evidence, and witnesses central to Aevoe's case in chief. Therefore, Pace contends, to deny a stay would create a risk of duplicative, piecemeal litigation that would waste the Court's time and resources. Aevoe argues that a stay would not conserve judicial resources because the Court's order dismissing Pace's counterclaims was not an appealable final judgment, and also because Pace is unlikely to succeed on appeal. However, the merits of Pace's appeal will be determined by the Ninth Circuit. As discussed above, the issues involved in Aevoe's claims and Pace's counterclaims are sufficiently intertwined to create a risk of duplicative litigation were the matter to proceed in this Court. A stay pending appeal of the counterclaims simplifies adjudication of those issues, facilitating judicial economy and thereby furthering the orderly course of justice. Thus, the Court finds that although there is the potential for some harm, it is outweighed by the potential hardship and inequity if the matter were to move forward. The Court finds that a stay would further the orderly course of justice.

### C. The Remaining Issues Are Moot.

Pace further requests, in the alternative to his foregoing arguments, a temporary stay of proceedings pending a motion for stay to be filed in the Ninth Circuit. Aevoe requests that, rather than granting Pace's motion to stay, the Court instead direct Pace to respond promptly to Aevoe's discovery requests. Because the Court finds that a stay is appropriate, these requests are moot.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Pace's motion to stay. Pace shall file a report informing the Court of the status of this matter within 10 days of the Ninth Circuit ruling.

**IT IS SO ORDERED.**

Dated: July 25, 2012

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE